# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PREPARED FOOD PHOTOS, INC.,

   Plaintiff,

v.            Case No: 6:23-cv-122-RBD-LHP

MYRTLE BEACH VIP PARTY BUS,
LLC,

   Defendant

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

 This cause came on for consideration without oral argument on the following

motion filed herein:

> **MOTION:** **RENEWED MOTION FOR DEFAULT FINAL JUDGMENT AGAINST DEFENDANT (Doc. No. 27)**
>
> **FILED:** **August 24, 2023**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

## I. BACKGROUND.

 On January 24, 2023, Plaintiff Prepared Food Photos, Inc., formerly known as

Adlife Marketing & Communications Co., Inc. ("Plaintiff"), initiated this copyright

infringement action against Defendant Myrtle Beach VIP Party Bus, LLC ("Defendant").   Doc. No. 1.   Plaintiff filed an amended complaint (the "Operative Complaint") on February 23, 2023.   Doc. No. 11.   In the Operative Complaint, Plaintiff alleges Defendant engaged in the unauthorized use of one of Plaintiff's copyrighted food industry photographs for the purpose of promoting Defendant's business, in violation of 17 U.S.C. § 501.   *Id.* ¶¶ 6–35.   As relief, Plaintiff requests a permanent injunction against Defendant, statutory damages, and attorneys' fees and costs.   *Id.* at 9–10.

Defendant was served with process on April 20, 2023, but did not answer or otherwise respond to the Operative Complaint.   Doc. No. 17.   Plaintiff thereafter obtained a Clerk's default against Defendant on June 15, 2023.   Doc. Nos. 20, 21. Plaintiff now[1] moves for final default judgment against Defendant, in which it seeks the following: (1) a permanent injunction enjoining Defendant from engaging in infringing activities; (2) an award of $23,976.00 in statutory damages; and (3) attorneys' fees and costs totaling $3,646.45 ($3,010.00 in attorneys' fees and $636.45 in costs).   Doc. No. 27, at 10–23.   With the motion, Plaintiff has submitted the Declaration of Doug Fleurant (Plaintiff's president) ("Fleurant"), the Declaration of

---

[1] The undersigned denied without prejudice Plaintiff's first motion for final default judgment (Doc. No. 23) for failure to comply with the page limitations set forth in Middle District of Florida Local Rule 3.01(a).   Doc. No. 25.

its counsel, Daniel DeSouza, Esq., billing records, invoices for costs, and a proposed order.   Doc. No. 27, Exs. A, B, C.

The motion was referred to the undersigned for issuance of a Report and Recommendation.  As of the writing of this Report and Recommendation, Defendant has not responded to the motion for default judgment, and the time for doing so has expired.   *See* Local Rule 3.01(c).[2]   Accordingly, the matter is ripe for consideration.

## II.      STANDARD OF REVIEW.

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.   First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.   Fed. R. Civ. P. 55(a).   Second, after obtaining clerk's default, the plaintiff must move for default judgment.   Fed. R. Civ. P. 55(b).   Before entering default judgment, the Court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted.   *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th

---

[2] It appears that Plaintiff served the motion on Defendant, however service is not required on parties who are in default for failure to appear.   *See* Fed. R. Civ. P. 5(a)(2).

Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").[3]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This analysis applies equally to motions for default judgment. *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (citations omitted).

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is also entitled to the relief requested. If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pleaded allegations of

---

[3] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages to be awarded.   *Id.* (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)).   Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]"   *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages).   Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.   *See Adolph Coors*, 777 F.2d at 1543-44.   However, "a hearing is not necessary if sufficient evidence is submitted to support the request for damages."   *Wallace*, 247 F.R.D. at 681.

## III.   ALLEGATIONS OF THE OPERATIVE COMPLAINT.

Plaintiff licenses "high-end, professional photographs for the food industry" via a monthly subscription service offered through its commercial website.   Doc. No. 11 ¶¶ 6–7.   "Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers."   *Id*. ¶ 10.   Plaintiff "does not license

individual photographs or otherwise make individual photographs available for purchase," and instead charges clients "a minimum monthly fee of $999.00 for access to its library of professional photographs."   *Id*. ¶¶ 8–9.   The standard terms of this monthly subscription include "a limited, non-transferable license for use of any photograph" that makes clear "all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity."   *Id*. ¶ 10.

The photograph at issue in this case is a professional photograph, titled "ChickenPiccata003" (the "Photograph").   *Id*. ¶ 11.   Plaintiff created the Photograph in 2005 and registered the Photograph with the Register of Copyrights on September 20, 2016, which was assigned Registration No. VA 2-017-741.   *Id*. ¶¶ 11–12; Doc. No. 11, Ex. A.   Plaintiff is, and has remained, the owner of the Photograph.   Doc. No. 11 ¶ 13.

Plaintiff alleges that on an unspecified date after the copyright registration of the Photograph, Defendant published the Photograph on its website.   *Id*. ¶¶ 16–17; *see also* Ex. B.   Plaintiff alleges that Defendant has not and has never been licensed to use or display the Photograph, and has never contacted Plaintiff to seek permission to use the Photograph in connection with its website or for any other purpose.   *Id*. ¶ 18.   Rather, Defendant utilized the Photograph for its own

commercial use, in connection with the marketing of Defendant's business.   *Id*. ¶¶ 19–20.

Plaintiff discovered Defendant's unauthorized use and display of the Photograph in March 2022, and thereafter Plaintiff notified Defendant in writing that the use of the Photograph was unauthorized.   *Id*. ¶ 21.   Through the date of the filing of the complaint, however, "Plaintiff has been unable to negotiate a reasonable license for the past infringement of its Work."   *Id*.

Plaintiff asserts one claim against Defendant: that Defendant willfully infringed upon and violated Plaintiff's exclusive rights to the Photograph, in violation of the Copyright Act, 17 U.S.C. § 501 *et. seq*, by reproducing, distributing, and publicly displaying the Photograph for Defendant's own commercial purposes without authorization from Plaintiff.   *Id*. ¶¶ 23–35.

## IV.   ANALYSIS.

### A.   Subject Matter and Personal Jurisdiction.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as the copyright claim is brought pursuant to federal statute.   Doc. No. 11, at 3.   The Court also has personal jurisdiction over Defendant because Defendant's alleged copyright infringement against Plaintiff, "a corporation organized and existing under the laws of the State of Florida with its principal place of business located in Broward County, Florida" (*see id*. ¶ 1),

constitutes a tortious act covered under Florida's long-arm statute, Fla. Stat. § 48.193.  *Id.* at 4.  *See generally Volt, LLC v. Volt Lighting Grp. LLC*, 369 F. Supp. 3d 1241, 1245 (M.D. Fla. 2019) ("Under Section 48.193(1)(a)(2), Florida Statutes, a non-resident submits to personal jurisdiction in Florida by [c]ommitting a tortious act within [Florida]." (internal citations omitted)); *see also Vallejo v. Narcos Prod., LLC*, No. 1:18-cv-23462-KMM, 2019 WL 5884494, at *2 (S.D. Fla. June 14, 2019) ("Copyright infringement is a tortious act, and the Florida long-arm statute confers jurisdiction if the effects of the infringement were felt in the state.  Here, it is undisputed that Plaintiff is a resident of Florida, and as such the effects of any alleged copyright infringement would be felt in Florida." (citing *Roberts v. Gordy*, No. 13-24700-CIV, 2015 WL 11202580, at *2 (S.D. Fla. Apr. 16, 2015))).

B. <u>Service of Process.</u>

Service of process on a business association is governed by Federal Rule of Civil Procedure 4(h), which, in turn, provides that service may be made "in the manner prescribed by Rule 4(e)(1) for serving an individual."   Fed. R. Civ. P. 4(h). Under Federal Rule of Civil Procedure 4(e)(1), "service is accomplished by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made or by delivering a copy to an agent authorized by appointment or by law to receive service of process."  *Wheeler v. Breedlove Motor Works, LLC*, No. 6:10-cv-41-Orl-

28DAB, 2010 WL 11626744, at *2 (M.D. Fla. Dec. 27, 2010).   Here, because service was made in South Carolina, Plaintiff could follow the law of that state to effect service.   *See id.*

South Carolina state law provides:   "If a limited liability company['s] . . . agent for service of process cannot with reasonable diligence be found at the agent's address, the Secretary of State is an agent of the company upon whom process, notice, or demand may be served."   S.C. Code Ann. § 33-44-111(b).   Plaintiff's process server tried and failed to serve Defendant's registered agent, Lynn C. James ("James"), at the address listed on the South Carolina Secretary of State's website and at "the only other business" near that address.[4]   Doc. No. 16.   Plaintiff thereafter served Defendant by delivering a copy of the summons and the Operative Complaint to the South Carolina Secretary of State, in compliance with South Carolina law.   Doc. No. 17.   *See* S.C. Code Ann. § 33-44-111(b).   *See also Carr v. TW Graham & Co. LLC*, No. 2018-001738, 2021 WL 1291925, at *1 (S.C. Ct. App. Apr. 7, 2021) (finding that the process server's affidavit of non-service was sufficient

---

[4] According to the South Carolina Secretary of State's website, James is the registered agent for Defendant, and the address listed for James is 1198 Memorial Park Road, Lancaster, S.C., 29720.   *See* https://businessfilings.sc.gov/BusinessFiling/ Entity/Search, then enter "Myrtle Beach VIP" into the "Business name begins with…" field.   The unexecuted summons states that Plaintiff's process server attempted service on James at the listed address, but that address was associated with a different business called "Color Creations," and the manager at that address had no knowledge of Defendant or James.   Doc. No. 16.

to support service by publication under the same statute under South Carolina law). Because Defendant has not appeared in this matter or otherwise timely filed a response to the Operative Complaint, the Clerk properly entered default against Defendant.   Doc. No. 21.   *See* S.C. Code Ann. § 33-44-111(b).

C. Liability on Copyright Infringement Claim (Count I).

Plaintiff alleges that Defendant reproduced, distributed, and publicly displayed the Photograph for its own commercial purposes without authorization from Plaintiff, in violation of 17 U.S.C. § 501.   Doc. No. 11 ¶¶ 27–28.   To establish a claim of copyright infringement under § 501, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (internal quotations omitted).

To satisfy the ownership element, "a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." *Bateman*, 79 F.3d at 1541 (alterations in original) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995)).   "A certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Id.* (citing 17 U.S.C. § 410(c)).   Once the plaintiff produces a certificate

of registration, "the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Id.* To satisfy the copying element, a plaintiff must demonstrate that, "as a factual matter, the alleged infringer actually copied plaintiff's copyrighted material," and that "the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (quoting *Lotus*, 49 F.3d at 813).

Plaintiff alleges that it owns a valid copyright to the Photograph and has attached to the Operative Complaint what it asserts is a true and correct Certificate of Registration of the copyright. Doc. No. 11 ¶ 25; *see also* Ex. A. The Certificate of Registration lists the date of the Photograph's first publication as August 13, 2005, however, the Certificate was issued on September 20, 2016, after the five-year period required by 17 U.S.C. § 410(c). Doc. No. 11, Ex. A, at 2. The Certificate therefore cannot constitute *prima facie* evidence of the validity of the copyright. *Bateman*, 79 F.3d at 1541. Nevertheless, "it is well-settled that ownership of the copyright is demonstrated through compliance with the formalities of registration." *Lifetime Homes, Inc. v. Residential Dev. Corp.*, 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) (citing *Donald Frederick Evans & Assoc., Inc., v. Cont'l Homes, Inc.*, 785 F.2d 897, 903 (11th Cir. 1986)). There is no dispute that Plaintiff complied with those formalities. "Although Plaintiff did not file the copyright registration within the five-year time

period, Plaintiff has produced the certificate of registration," and Defendant by virtue of its default has not "pointed to any evidence indicating that Plaintiff's certificate of registration is not valid."   *See id*.   Accordingly, the undersigned finds Plaintiff has established that it owns a valid copyright as to the Photograph.

With respect to the copying element, Plaintiff alleges that Defendant copied and published the Photograph on its website.   Doc. No. 11 ¶¶ 16, 20.   Plaintiff has also included a screenshot of Defendant's website showing the image, along with a copy of the Photograph.   *Id*. ¶¶ 11, 16; *see also* Ex. B.   These allegations and evidence, which must be accepted as true, and which Defendant has not challenged, are sufficient to establish that Defendant copied and used a copy of the Photograph without Plaintiff's permission.   *See Latimer*, 601 F.3d at 1233 (copying element was satisfied where defendants distributed and published digital copies of the plaintiff's photographs which were indistinguishable from the originals).

Accordingly, the undersigned finds that Plaintiff has established Defendant's liability for copyright infringement in violation of 17 U.S.C. § 501(a).

D. Relief Sought.

As relief, Plaintiff has elected to seek an award of statutory damages, a permanent injunction, and attorneys' fees and costs.   Doc. No. 27.   The undersigned will address each request in turn.

i.     *Statutory Damages.*

Pursuant to § 504, an infringer of copyright is liable for either actual damages and additional profits of the infringer, or statutory damages.   17 U.S.C. § 504(a); *see also Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997).   Here, as discussed below, Plaintiff has calculated the fair market value of its actual damages at $11,988.00, which is comprised of the cost of an annual license fee.   Doc. No. 27, at 14. However, Plaintiff contends that its actual damages will not sufficiently compensate it for the harm caused by Defendant's infringement.   *Id*. at 17.   As such, Plaintiff instead has elected to request $23,976.00 in statutory damages for the copyright infringement claim, which is two times its actual damages.

With regard to statutory damages, Section 504(c) states:

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c).   Further, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."   *Id.* § 504(c)(2).   *See also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1271 (11th Cir. 2015).   The Court has wide discretion to set an amount of statutory damages.   *Cable/Home Commc'n Corp. v. Network Prods.*

*Inc.*, 902 F.2d 829, 852 (11th Cir. 1990).   In exercising this discretion, courts in this District have considered the following nonexclusive factors: 1) the expenses saved and the profits reaped; 2) the revenues lost by the plaintiff; 3) the value of the copyright; 4) the deterrent effect on others besides the defendant; 5) whether the defendant's conduct was innocent or willful; 6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and 7) the potential for discouraging the defendant.   *Bait Prods. Pty Ltd. v. Murray*, No. 8:13-cv-169-T-33AEP, 2013 WL 4506408, at *5 (M.D. Fla. Aug. 23, 2013) (quoting *Rolex Watch U.S.A., Inc. v. Lynch*, No. 2:12-cv-542-FtM-38UAM, 2013 WL 2897939, at *5 (M.D. Fla. June 12, 2013)).

To support its request for statutory damages, Plaintiff submits the sworn declaration of Fleurant, in which he avers that Plaintiff typically receives a monthly subscription fee between $999.00 and $2,500.00, for creating and licensing the right to use and display similar types of photographs on the internet.   Doc. No. 27, Ex. A, ¶ 7.   Fleurant further avers that Plaintiff's "standard licensing terms require a minimum of a twelve (12) month licensing commitment . . . to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement."   *Id*. ¶ 5.   Thus, had Defendant hired Plaintiff to license the Photograph and to reproduce and display the Photograph on their website, Plaintiff would have charged at least

$11,988.00 per year for such use ($999.00 multiplied by 12 months, without prorating).   *See* Doc. No. 27, at 11, 13–14.   Plaintiff states these licensing fees are reasonable because Plaintiff offers semi-exclusivity to its licensees, so that Plaintiff can assure its customers that a nearby competitor will not be using the same photographs.   Doc. No. 27, Ex. A., ¶ 8.   In addition, for each photo in Plaintiff's online database, "Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library," whereupon Plaintiff accrues "additional costs associated with postprocessing the image using specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print or digital media advertising."   *Id.*, ¶ 12.

For the present case, Plaintiff determined that the Photograph was published as of March 2022, and therefore Defendant would owe Plaintiff at least one year of licensing fees (from March 2022 to January 2023) as Plaintiff does not prorate its licenses.   Doc. No. 27, at 13-14; Ex. A., ¶ 18.   Plaintiff then requests a multiplier of two due to Defendant's willful infringement of Plaintiff's copyright, as well as to "account for Plaintiff's inability to conduct discovery," and to "create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual

damages, and to deter future violations of copyright law."   Doc. No. 27, at 17–20.
Multiplying the damages by two brings the total of statutory damages to $23,976.00.
*Id.*

Upon review, the undersigned finds that Plaintiff's requested statutory
damages are reasonable and appropriate here.   Specifically, given Defendant's
default, Plaintiff has established that Defendant acted willfully in their infringement
of the Photograph's copyright.   "Willful infringement has been described as when
the infringer acted with 'actual knowledge or reckless disregard for whether its
conduct infringed upon the plaintiff's copyright.'"   *Arista Recs., Inc. v. Beker Enters.,
Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (quoting *Original Appalachian
Artworks, Inc. v. J.F. Reichert, Inc.,* 658 F. Supp. 458, 464 (E.D. Pa. 1987)).   In the
Operative Complaint, Plaintiff alleges that in posting the Photograph on its website,
Defendant "acted with actual knowledge or reckless disregard for whether its
conduct infringed upon Plaintiff's copyright."   Doc. No. 11 ¶ 29.   Plaintiff further
alleges that it sent written notice to Defendant notifying it of its unauthorized use,
to no avail.   *Id.* ¶ 21.

These allegations, which the undersigned accepts as true, support Plaintiff's
claim of willfulness.   *See Peer Int'l Corp. v. Max Music & Ent., Inc.*, No. 03 Civ.
0996KMWDF, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004) (finding of willful
infringement warranted where defendant disregarded notice of copyright and

continued to infringe); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227–28 (7th Cir. 1991) (holding that defendant was a willful infringer based on fact that defendant received a letter stating that it could not broadcast music without a license and that the defendant had demonstrated resistance to paying copyright fees in the past).   Further, a court may also "infer that a defendant's copyright infringement is willful based on the defendant's default alone." *See Bowers v. David Jacobs-Publ'g Grp., LLC*, No. 8:19-cv-1361-T-35TGW, 2019 WL 8989845, at *3 (M.D. Fla. Oct. 31, 2019) (citing *Arista Recs.*, 298 F. Supp. 2d at 1313 (inferring willfulness based on Defendant's default where willfulness was alleged in complaint)).

"Courts in this Circuit have looked to actual damages and utilized a multiplier to arrive at the appropriate amount of statutory damages." *Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC*, 2022 U.S. Dist. LEXIS 205649, *9 (M.D. Fla. Mar. 22, 2022).   And the undersigned finds that awarding Plaintiff two times its actual damages in light of Defendant's willful conduct will not result in a windfall recovery, but rather bears a relationship to the actual damages suffered, and therefore is an appropriate remedy under § 504(c).   *See, e.g., id.* (doubling Plaintiff's actual damages of $11,988.00 and awarding a total of $23,976.00 in statutory damages to "appropriately account for the circumstances surrounding this infringement and the need for deterrence"); *see also Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp.*, No. 23-CV-1484 (JMA) (AYS), 2023 WL 4867457, at

*3 (E.D.N.Y. July 31, 2023) (same); *Prepared Food Photos, Inc. v. Shadowbrook Farm LLC*, No. 1:22-CV-00704 (LEK/ATB), 2023 WL 4199412, at *5–6 (N.D.N.Y. June 27, 2023) (same).   Accordingly, the undersigned will respectfully recommend that the Court award Plaintiff $23,976.00 in statutory damages pursuant to § 504(c).

      *ii.*     *Injunctive Relief.*

Plaintiff also asks the Court to enter, pursuant to § 502 of the Copyright Act, a permanent injunction:

> against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

Doc. No. 27, at 22–23.   A court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).   A plaintiff seeking a permanent injunction must demonstrate the following: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a

permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006)).

Plaintiff argues that Defendant's conduct has caused—and any continued infringing conduct will continue to cause—irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law.   Doc. No. 27, at 22.   In particular, Defendant's unlicensed use of the Photograph impairs the market value of the work, and may dissuade competing businesses from using the Photograph to market their business, and it may encourage others to use the Photograph without first obtaining a license and paying a fee to do so.  *Id.   See also* Doc. No. 27, Ex. A ¶ 22.   The undersigned has recommended an award of damages that would sufficiently remedy the injury caused by Defendant's infringement, but those damages would not necessarily preclude further monetary and non-monetary injury if Defendant continues to use the Photograph without Plaintiff's permission. Therefore, Plaintiff could continue to be harmed if Defendant is not enjoined from further use of the Photograph.   Therefore, it is clear that Plaintiff will continue to be harmed if Defendants are not enjoined from further use of the Photograph. There also appear to be no other remedies at law that would adequately compensate Plaintiff while also ensuring Defendant ceases its infringement.   Further, Plaintiff would endure greater hardship than Defendant if Defendant's use of the

Photograph was not enjoined.   And finally, the public interest would not be adversely affected if Defendant is enjoined from using the Photograph.

For these reasons, the undersigned finds that Plaintiff is entitled to a permanent injunction against Defendant.   *See Patriot Fine Foods LLC*, 2022 U.S. Dist. LEXIS 205649, at *9 (entering substantially similar permanent injunctive relief); *Shadowbrook Farm LLC*, 2023 WL 4199412, at *6–7 (same).   *See also Arista Recs.*, 298 F. Supp. 2d at 1314 (entering permanent injunction against the defendants with respect to plaintiff's copyright work, including work not yet created and not listed in the complaint); *Affordable Aerial Photography, Inc. v. Villa Valentina Realty LLC*, No. 17-81307-CV-MIDDLEBROOKS/BRANNON, 2018 WL 8129826, at *7 (S.D. Fla. June 7, 2018) (granting virtually identical permanent injunction to plaintiff in substantially similar copyright infringement case).   The undersigned will therefore recommend that the Court enter the requested permanent injunction against Defendant.

iii. *Attorneys' Fees.*[5]

Plaintiff seeks an award of attorneys' fees in the amount of $3,010.00.   Doc. No. 27, at 21.   Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party . . . the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs."[6]   Fees and costs are commonly awarded by courts in copyright infringement default cases. *Lived in Images, Inc. v. Noble Paint & Trim, Inc.*, No. 6:15-cv-1221-Orl-40DAB, 2016 WL 791061, at *5 (M.D. Fla. Feb. 5, 2016), *report and recommendation adopted*, 2016 WL 761029 (M.D. Fla. Feb. 26, 2016) (citing *Arista Recs.*, 298 F. Supp. 2d at 1316).

Courts utilize the lodestar method in assessing a request for attorneys' fees pursuant to § 505.   *See, e.g.*, *Bork v. Tran Huong Quynh*, No. 2:19-cv-354-FtM-38MRM, 2020 WL 6366189, at *1 (M.D. Fla. Oct. 14, 2020), *report and recommendation adopted*, 2020 WL 6363847 (M.D. Fla. Oct. 29, 2020).   "The starting point in fashioning an award of attorney's fees is to multiply the number of hours

---

[5] Local Rule 7.01 provides for a bifurcated process to determine both entitlement and amount of attorneys' fees and expenses.   However, in the interests of judicial efficiency, and given the fact that Defendant is in default, the undersigned has addressed the merits of Plaintiff's requested fees and costs, and respectfully recommends that the Court forego the procedural mechanism set forth in Rule 7.01 and rule on both entitlement and quantification without additional motions practice.

[6] Section 1203(b) also permits the recovery of costs, and an award of reasonable attorneys' fees to the prevailing party.   17 U.S.C. § 1203(b)(4)-(5).   Upon entry of a final judgment, Plaintiff is the prevailing party in this action.   *See Affordable Aerial Photography, Inc. v. Aaron Chandler Constr., Inc.*, No. 20-81185-CV, 2021 WL 2430999, at *5 (S.D. Fla. Mar. 23, 2021).

reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). In applying the lodestar analysis, the party seeking fees has the burden of establishing that the hourly rate and hours expended are reasonable. *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

Under the lodestar method, a reasonable hourly rate for an attorney is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. The "relevant market" is "the place where the case is filed." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). To establish that the requested hourly rate is consistent with the prevailing market rate, the fee applicant must "produc[e] satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. This requires "more than the affidavit of the attorney performing the work," and generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.* In addition, the Court may consider the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[7] and it may rely on

---

[7] *Johnson* was abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). However, the *Johnson* factors remain viable in assessing a reasonably hourly rate in calculating attorney's fees. *See Loranger*, 10 F.3d at 781 n.6 ("Although its balancing test

its own knowledge and experience of the prevailing market rate.  *See Norman*, 836 F.2d at 1299–1300, 1303.

The undersigned will first consider the reasonableness of the rates requested by Plaintiff.   Plaintiff seeks rates of $450.00 per hour for the work of its counsel, Daniel DeSouza, Esq., $325.00 per hour for the work of an associate, Meghan Medacier, Esq., and $125.00 per hour for the work of a paralegal, Denise Sosa.   Doc. No. 27, Ex. B ¶¶ 10–11.   To establish the reasonableness of these rates, Plaintiff submits the declaration of its counsel, Attorney DeSouza, who has been a member of the Florida Bar since 2006 and is one of two principal shareholders of the firm CopyCat Legal, which specializes in copyright infringement and is representing Plaintiff in this action.   *Id.* ¶ 2.   Attorney DeSouza also affirms Attorney Medacier has been a member of the Florida Bar since 2021 and joined CopyCat Legal in 2023. *Id.* ¶ 5.

---

has since been displaced by the lodestar formula, we have expressed our approval of district courts considering the *Johnson* factors in establishing a reasonable hourly rate." (citing *Norman*, 836 F.2d at 1299)).

The *Johnson* factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.   *Johnson*, 488 F.2d at 717–19.

Plaintiff submits no evidence beyond the affidavit of its counsel to establish the reasonableness of its requested rates. However, Plaintiff cites to several decisions from the Middle District of Florida that have awarded the same or similar hourly rates for Attorney DeSouza's work in prior cases, as well as the requested paralegal rate, and the undersigned finds those decisions to be persuasive. *See* Doc. No. 27, Ex. B ¶¶ 11–12. *See, e.g.*, *Patriot Fine Foods LLC*, 2022 U.S. Dist. LEXIS 205649, at *11–12 (awarding the plaintiff's requested $450.00 per hour rate for Attorney Desouza based on his experience, "the prevailing market rates, and Defendant's failure to oppose the reasonableness of the rate"); *Affordable Aerial Photography, Inc. v. Elegance Transp., Inc.*, No. 6:21-cv-1166-CEM-LHP, 2022 WL 2306182, at *11 (M.D. Fla. Feb. 23, 2022), *report and recommendation adopted*, 2022 WL 2306516 (M.D. Fla. Mar. 14, 2022) (awarding $450.00 per hour for the work of Attorney DeSouza and $125.00 per hour for paralegal work). *See also Bork*, 2020 WL 6366189, at *2 (in action for copyright infringement filed in the Middle District of Florida, finding that $450.00 per hour was reasonable rate for attorney who practices commercial litigation and intellectual property law and had been admitted to Florida Bar ten years prior); *Reiffer v. World Views LLC*, No. 6:20-cv-786-RBD-GJK, 2021 WL 1269247, at *5 (M.D. Fla. Mar. 1, 2021) ("A review of the case law reveals that the median hourly rate for paralegals in Florida is $125." (citation

omitted)), *report and recommendation adopted*, 2021 WL 1264249 (M.D. Fla. Apr. 6, 2021).

However, Attorney De Souza provides no support for the requested $325.00 per hour for the work of associate attorney Medacier, an attorney with approximately two years' experience, besides a statement that the rate is "within the range charged by other lawyers in South Florida and are fair and reasonable rates for this type of work."   Doc. No. 27, Ex. B ¶ 7.   The relevant market though, is the Orlando Division of the Middle District of Florida.   *See Barnes*, 168 F.3d at 437.   Given Attorney Medacier's level of experience, the undersigned will recommend that the Court reduce Attorney Medacier's hourly rate to $225.00 per hour.   *See Norman*, 836 F.2d at 1304 (court may rely on its own expertise in determining an appropriate fee); *see also McKennon v. NewsCastic Inc.*, No. 6:18-cv-323-Orl-41DCI, 2018 WL 5847424, at *8 (M.D. Fla. Sept. 7, 2018), *report and recommendation adopted*, 2018 WL 5840687 (M.D. Fla. Nov. 8, 2018) (finding appropriate rate for associate in copyright infringement action was $225.00 per hour); *BWP Media USA Inc. v. A.R. Commc'ns, LLC*, No. 6:14-cv-120-Orl-22KRS, 2014 WL 5038590, at *6 (M.D. Fla. Oct. 6, 2014) (finding that a reasonable hourly rate for an associate in copyright infringement case was $225.00 per hour).

Next, the undersigned considers the hours expended by Plaintiff's counsel and the paralegal.   According to Attorney DeSouza's Declaration and the attached

billing records, Attorney DeSouza spent 2.0 hours, Attorney Medacier spent 5.8 hours, and Ms. Sosa spent 1.8 hours prosecuting this action.   Doc. No. 27, Ex. B ¶ 10.   *See also id.* at 11 (billing records detailing when and how Plaintiff's counsel expensed a total 9.6 hours prosecuting this action).   Plaintiff represents that the time expended by Attorney DeSouza, Attorney Medacier, and Ms. Sosa in this case included investigating the alleged infringement, drafting an initial notice letter to Defendant, drafting the complaint, obtaining a Clerk's default, and drafting the present motion and attached exhibits/supporting declarations.   *Id*. ¶ 10.

The undersigned finds these representations, along with a review of the provided billing records, sufficient to establish the reasonableness of the hours requested, and that the hours expended on this case do not appear to include any "excessive, redundant or otherwise unnecessary hours."   *See Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988).   And again, by virtue of its default, Defendant has not objected to these hours.[8]

Accordingly, based on the foregoing, the undersigned respectfully recommends that the Court award Plaintiff a total of $2,430.00 in attorneys' fees, as follows:

---

[8] "Because reducing the hours claimed requires the court's precision, the law in this circuit commands that both the proof of the hours spent in litigation and *any corresponding objections* posed be voiced with a similar exactitude."   *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996) (emphasis added) (citing *Norman*, 836 F.2d at 1301).

- Attorney DeSouza: $450.00 per hour x 2.0 hours = $900.00

- Attorney Medacier: $225.00 per hour x 5.8 hours = $1,305.00

- Paralegal Sosa: $125.00 per hour x 1.8 hours = $225.00

- Total = $2,430.00

    *iv.    Costs*

Plaintiff also seeks $636.45 in costs as follows: $402.00 for the filing fee for this action, and $234.45 for service of process on Defendant.   Doc. No. 27, at 21; Doc. No. 27, Ex. B, at 12–14.   To support this request, Plaintiff relies on Attorney DeSouza's Declaration, as well as invoices for the costs incurred.   Doc. No. 27, at 21; Doc. No. 27, Ex. B ¶ 15 & at 12–14.

The filing fee and fees for service of process are recoverable costs.   *See* 28 U.S.C. § 1920(1); *Ramirez v. Raptor Tech. Grp., Inc.*, No. 5:12–cv–100–Oc–34TBS, 2012 WL 2589256, at *4 (M.D. Fla. June 8, 2012) (noting that service of process and filing fees are compensable under § 1920), *report and recommendation adopted*, 2012 WL 2586220 (M.D. Fla. July 3, 2012).   However, recovery of the costs of private process servers are generally limited to the $65.00 per hour rate charged by the United States Marshal's Service to effectuate service.   *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000); *see* 28 C.F.R. § 0.114(a)(3); *Cadle v. GEICO Gen. Ins. Co.*, No. 6:13-cv-1591-Orl-31GJK, 2015 WL 4352048, at *2 (M.D. Fla. July 14, 2015).   Beyond the line-item charge for service of process and an invoice from the process server, Plaintiff

submits no further information regarding the hourly cost for service.   *See* Doc. No.

27, Doc. No. 27, Ex. B, at 13–14.   Plaintiff also includes in its request for service costs

a $45.00 "Service Fee" predating Plaintiff's attempts to personally serve James in

South Carolina.   *See* Doc. No. 27, Ex. B, at 13.   *See also id.* at 12 (counsel's internal

invoice appearing to refer to this cost as "Central Florida Process").   Plaintiff does

not explain what this "Service Fee" refers to or why it is a taxable cost under 28

U.S.C. § 1920.

Thus, Plaintiff has not established why it would be entitled to anything more

than $65.00 in costs for service of process on Defendant.   Accordingly, the

undersigned will recommend that the Court reduce the amount of costs sought by

Plaintiff to $467.00 ($402.00 for the filing fee + $65.00 for service on Defendant).   *Cf.*

*McCort v. ADCS Clinics, LLC*, No. 6:20-cv-335-WWB-LHP, 2022 WL 2317838, at *3

(M.D. Fla. Apr. 21, 2022) ("[W]hile Plaintiff may not have objected, this does not

provide Defendant carte blanche to request and receive costs that are not legally

recoverable." (citing *Cadle*, 2015 WL 4352048, at *2)).

> *v.*     *Prejudgment Interest.*

The Operative Complaint requests an award of prejudgment interest.   Doc.

No. 11, at 9.   However, Plaintiff's default judgment motion does not renew this

request and does not otherwise provide argument or authority explaining why it is

entitled to such relief, nor does Plaintiff provide a computation of the prejudgment

interest sought. *See* Doc. No. 27. It is Plaintiff's burden, not the Court's, to demonstrate that it is entitled to the relief sought in the Motion. Plaintiff has failed to satisfy that burden with respect to its request for prejudgment interest, and given this failure, the undersigned finds that Plaintiff should not be awarded prejudgment interest on the recommended statutory damages. *See McKennon v. NewsCastic, Inc.*, No. 6:18-cv-323-Orl-41DCI, 2018 WL 5847424, at *7 (M.D. Fla. Sep. 7, 2018) (recommending denial of similarly deficient request for prejudgment interest), *report and recommendation adopted*, 2018 WL 5840687 (M.D. Fla. Nov. 8, 2018).

## V.    RECOMMENDATION.

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that the Court **GRANT in part** and **DENY in part** Plaintiff's Renewed Motion for Default Final Judgment Against Defendant (Doc. No. 27) as follows:

1. Default judgment be entered in favor of Plaintiff and against Defendant.

2. Defendant and its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, be permanently enjoined from:

    i.    directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly

> display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and/or
>
> ii.    directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

3. Plaintiff be awarded a total of $23,976.00 in statutory damages for Defendant's violation of 17 U.S.C. § 501;

4. Plaintiff be awarded costs in the amount of $467.00;

5. Plaintiff be awarded attorneys' fees in the amount of $2,430.00;

6. **DENY** Plaintiff's motion (Doc. No. 27) in all other respects.

The undersigned further respectfully recommends that, to ensure Defendant is made aware of the terms of the injunction, Plaintiff be directed to serve a copy of the Court's Order on Defendant at its last known address via certified U.S. Mail.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.

11th Cir. R. 3-1.

 Recommended in Orlando, Florida on December 21, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy